CASE 67—PETITION EQUITY—SEPTEMBER 30.

# Gray  vs.  Oyler.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1.   If one, without claim or contract, voluntarily erects a building on an-
     other's land, the law would doubtless withhold compensation, and also
     prevent his removal of the fixtures; and so with a lessee who shall,
     without contract, express or implied, voluntarily erect fixtures, as
     contradistinguished from chattels, on the leased premises; but not so
     when a contract is shown, whether written or verbal, express or
     implied.

2.   A lease, with the privilege to the tenant to erect buildings on the leased
     premises, without reciting fully the agreement in reference to such
     buildings, or whether the buildings were to remain and be paid for by
     the landlord or be removed by the tenant at the end of the term—this
     ambiguity may be supplied by parol proof.   And it appearing by such
     parol evidence that the tenant was to have the privilege of removing
     the buildings, either express or implied, or that the landlord should
     pay for the same at the end of the term, the tenant should not be pre-

vented from removing them by the interposition of the chancellor, in the absence of any offer by the landlord to reimburse or compensate him for his outlay.

STITES & BULLITT,                    For Appellant,
                    CITED—

13 *B. Mon.*, 175.

16 *B. Mon.*, 335.

16 *B. Mon.*, 686.

18 *B. Mon.*, 60.

18 *B. Mon.*, 494.

3 *Met.*, 127.

3 *Met.*, 148.

4 *Met.*, 159.

4 *Met.*, 282.

4 *Met.*, 355.

1 *Duvall*, 30 ; *Quisenberry vs. Artis.*

1 *Duvall*, 262 ; *Whitaker vs. Sandefer.*

1 *Duvall*, 59 ; *Gregory vs. McFarland.*

3 *Met.*, 64.

PIRTLE & CARUTH and W. E. WOODRUFF,      For Appellee,
                    CITED—

2 *Peters*, 137 ; *Van Ness vs. Packard.*

7 *Barb. S. C. R.*, 266 ; *King vs. Wilcomb.*

19 *N. Y. Rep.*, 234 ; *Ombony vs. Jones.*

*Taylor's Landlord and Tenant, p.* 400, *ed.* 1866.

*Ib.*, *secs.* 544, 545, 546, 547.

46 *Barb.* ; *Wintermute vs. Light.*

1 *Hill.*, 177 ; *Smith vs. Benson.*

1 *Met.* (*Mass.*), 313 ; *King vs. Wilcomb.*

7 *Howard's* (*Miss.*) *R.*, 423 ; *Stillman vs. Hamer.*

6 *Greenleaf*, 404 ; *Osgood vs. Howard.*

1 *Dana*, 591 ; *Wickliffe vs. Clay.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The written lease between Gray and Oyler for a lot in Louisville, dated July 17th, 1855, contemplated the erection of a new building, as one of its stipulations is, that "the party of the first part agrees that the materials contained in the old building on the premises may be used by said party of the second part in the construction of a new house to be erected by the party of the second part." Oyler was then and had been the tenant of Gray for this lot when this leasing for five years, to commence from the first of the following April, was entered into.

The only consideration for the lease by its own terms was the rent reserved. It is not even averred in the petition that the erection of the new house was any part of the consideration. The terms to be performed had been set out, when, near the close of the writing, the above stipulation is inserted, not by way of consideration or covenant to build the house, but merely giving permission to use the old materials.

The evidence conduces to establish that the contract of leasing contemplated the erection of valuble buildings on the lot by Oyler, and that at the end of the term he was to be paid for these buildings, or to have the privilege of removing them, and that this was left out of the written memorial of the lease, because appellant then stated that the lot belonged to his daughter, and that she would be of age or married at the expiration of the lease, and she could either pay for the house or appellee could remove it, as might then be agreed.

The intrinsic probabilities fortify this conclusion also, for it is evident that the use of the lot and not of the then old building on it was the important consideration of the leasing, and to make it valuable there must be erected new buildings; and in pursuance of this motive,

in the year 1855, Oyler did erect the three-story brick house, with two store-rooms on the ground floor, and some fourteen other rooms, which he used as a tavern or boarding-house, and the remainder of the lot not covered by the building he used as a wagon-yard.

This lease was for only five years, with a right of extension for five more, by paying its then value, not, however, to be less than six per cent. annually upon the value of the property. At the expiration of the first five years the parties agreed on the old rate of renting for this extension, without calling in arbritrators as provided in the lease. The terms of the contract, as well as the conduct of the parties, show that the new buildings were not to be estimated in the extension of the lease, but only the value of the lot, and why? Evidently because the building was Oyler's; otherwise, it would probably have doubled or trebled or quadrupled the annual rent for the five years of the extension. Besides, we can hardly realize that an ordinarily prudent man would erect for the landlord such a building, costing at least four thousand dollars, on a lease for five years on property, the ground rent of which was only six dollars per foot, or four hundred and twenty dollars annually. The evidence also conduces to establish that Gray, subsequent to the date of the lease and the erection of the building, recognized it as the property of Oyler.

Gray, in his petition for an injunction, alleges that this lot and house are his property; if they are not, the dissolution of his injunction was right; for if the title be in his daughter, he cannot, in his own name and right, maintain his injunction. But suppose the lot is his property, how stands the matter? The terms of the contract is always the law between the parties, unless some statute or public policy be contravened. It is true,

courts are often embarrassed to ascertain what are the terms of the contract, and often things are done which were neither contemplated nor contracted for; and in such cases the rights of the parties must be regulated by the presumptions and principles of law. And many embarrassing questions as to what are fixtures and what chattels, what the rights of landlords and what the rights of tenants, in relation thereto, have perplexed the courts in the absence of any express understanding and covenant; but when expressly agreed and contracted between the parties, but little if any embarrassment has resulted.

The ambiguity of the covenant in the lease might authorize the introduction of parol testimony as to the building to be erected. It was certainly competent to show the understanding of the parties, and their conduct subsequent to the date of the lease; if it be conceded, no grounds are laid otherwise for its admission.

If the title to the lot was in appellant at that time, the reason assigned by him, as proved, for not inserting it in the written memorial, was both unsubstantial and incorrect.

We regard the contract made out by the proof as being that Oyler should be paid for the new building, or should have the right to remove it. A parol contract for the sale of land or the lease thereof, for a longer term than three years, is not void; but rights and equities may spring out of such which courts will protect.

Had all this leasing been by parol, we cannot doubt but that, after the parties had acted on it, and the tenant been permitted to erect the buildings, and enjoyed the full term, that the chancellor would have seen that full justice should be done before he would interpose on appellant's application.

The same equity that protects a parol purchaser of land would protect a parol lessee.

If one, without claim or contract, voluntarily erects a building on another's land, the law would doubtless withhold compensation, and also prevent his removal of the fixtures; and so with a lessee who shall, without contract, express or implied, voluntarily erect fixtures, as contradistinguished from chattels, on the leased premises; but not so when a contract is shown, whether written or verbal, express or implied; hence we agree with appellant's counsel, that in a leasing for the purpose of raising and selling plants, that it is implied that the tenant may remove the plants on hand at the end of the term; and that this is a more legal and rational ground than placing it on the tenant's general right to remove any additions or improvements which he may make upon the land, as in *King vs. Wilcomb* (7 *Barb. S. C. R.*, 266.)

Having ascertained by proof that appellee was to be paid for the building erected by him, or else he should be permitted to remove it, the chancellor should not interpose to prevent this removal in the absence of any offer by appellant to reimburse him in his outlay, or in anywise to compensate him.

Whilst we concur with much of the cogent reasoning of the learned counsel of appellant as to the proper distinction between chattels and fixtures, yet we do not regard this as a proper case for its application.

Had this contract, as established by the parol proof, been reduced to writing, it is clear that such would not have applied, and we think it just as inapplicable when the contract is parol. Had the consideration not been set out in the written lease, it is clear that it could have been shown by parol proof; the consideration for building this house is nowhere set out, and therefore can as

well be shown by proof *aliunde*.  Whether the house was
to be log, frame, or brick, whether small, medium, or large,
whether one, two, or three stories high, are not desig-
nated in the writing, not even what it was to cost.
These not being shown in the writing, may be proven
otherwise.

The title to the house was the subject of the contro-
versy.  This depended upon the contract between the
parties.  As the writing did not evidence this, parol proof
may establish it; and this violates none of the established
rules of evidence, but only supplies an ambiguity of the
written memorial.

The parol evidence indicates that the kind of house
contemplated to be built was left to the discretion of
appellee.

We are inclined to believe, however, that appellant
was entitled to some remuneration for the materials of
the old building, and has a lien upon the new for this;
and that appellee should not be permitted to remove the
new building until this be ascertained and paid; but as
this is not specifically alleged as a cause of injunction,
and only the general allegation of the use of his old
materials and their value is made by appellant, we think
that a reversal for this cause should be without costs to
either party.

Wherefore, the judgment is reversed, with directions to
the court below to ascertain the value of the old materials,
and to allow appellant their reasonable value; and, upon
the payment thereof, or the bringing into court by ap-
pellee a sufficient sum reasonably to pay this, the court
should discharge said injunction, unless Gray should also
offer to reimburse appellee for his outlay, or compensate
him for said building so erected by him.

This reversal is without costs to either party.