## Continental Insurance Co. v. Ford (2 Cases).

(Decided October 25, 1910.)

### Appeals from Owen Circuit Court.

1. Fire Insurance—Assumption of Insured—Facts Known to Insurer —Intentional Concealment.—The rule in this State is that the insured has the right to assume that the company has made inquiries of him touching every material fact affecting the risk, and to avoid the policy it must be found that not only that the concealed matter was material, but that it was intentionally and fraudulently concealed.

2. Questions Asked by Insurer—Correct Answers Given—False Answers Inserted by Insurer—Insured Not Responsible.—If the insured gives correct answers to the only questions asked of him and the agent who fills the blank inserts in the application answers to the questions not asked of the insured, and insured signs the application without reading it, or knowing of the false answers so inserted, he is not responsible for the answers so made.

3. Mortgage on Property Insured—Innocent Concealment by Insured—Proof Required.—Where there is a mortgage on the property insured, in order that the insurer may be relieved on the ground of fraudulent concealment by the insured, the proof should show that the insured knew, or, the circumstances were such that an ordinarily prudent man would have known, that the existence of the mortgage lien was material to the risk.

JOHN W. DOUGLASS and OLIVER, OLIVER & WICKLIFFE for appellant.

W. A. LEE, BATTS, PERRY & LINDSEY for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

These two cases were heard in one trial below, and will be considered together on this appeal.

On August 27th, 1908, appellee, C. B. Ford, obtained from appellant, Continental Insurance Company, a policy of insurance covering his dwelling house and household goods. The house was insured for $700 and the household goods for $300. On November 12th, 1908, appellee obtained from appellant another policy for $3,-800, divided as follows: $1,000 on his store house; $2,-600 on his stock of merchandise, and $200 on his store furniture, fixtures, &c. On August 2, 1909, the store house, main dwelling house and the contents of each were totally destroyed by fire.

Appellee owned two tracts of land, one of thirty-two acres, worth about $1,000, and one of four acres upon which were situated the dwelling house, store house and stock of goods, worth about $3,300. When appellee applied for these policies, there were upon the 4-acre and 32-acre tracts of land mortgage liens, unreleased of record, aggregating $4,900. One of these mortgages was for $1,500, one-half of which appellee claims to have paid at the time of the application. In each of the applications, under the head of incumbrances, are the following questions: "Is the land incumbered?" and "Is the personal property incumbered?" In each case the answer is "No."

Shortly after the fire, appellant's adjuster went to Owen county to settle the loss. He carried with him a copy of appellee's original application. According to his testimony, he and Mrs. Ford read over to appellee the latter's answers in the original application. He then obtained from appellee an affidavit to the effect that his answers in the original application were true. Prior to that time he had ascertained that there were mortgages on the property. When he secured appellee's affidavit he made up his mind to resist payment of the policy. He was not deceived at the time, for he knew of the existence of the mortgages.

The testimony for appellee is to the effect that appellant's local agent approached him for the purpose of getting him to take out the insurance; he did not apply to the agent. The agent did not ask him if the real estate was incumbered; asked him if he owned the property and if the stock of goods was mortgaged; never at any time asked him if there was a mortgage upon the real estate. He did not read the application or hear it read; supposed it contained the answers which he had made to the agent. The latter filled out the application.

Appellee did not know that the fact that there were mortgages on the property would affect his right to obtain insurance; did not know that mortgages had anything to do with insurance; learned this fact only when he heard the matter discussed in court. He trusted to the agent to make the answers and he signed the application without knowing the answers made by the agent. When appellant's adjuster came he brought a piece of paper; told appellee it was a copy of the policy of Mr. Boerner (appellant's local agent.) Appellee did not have his glasses, and his wife started to read it. The adjuster took it and read it rapidly, and then said it was a copy of the policy which appellee would have to sign and swear to before he would get the money. The adjuster never asked him whether or not the answers to the questions in the paper were the same as made to Mr. Boerner; never asked him any question; just read it and said it was a copy of the policy and requested appellee to sign it; thought he would have to sign it in order to get his money.

Appellee brought these two actions to recover on the policies in question. Appellant made no claim that the property insured was not worth what appellee represented it to be. It is not even suggested that appellee was guilty of any wrong-doing in connection with the fire. Appellant defended upon three grounds: First, that appellee falsely and fraudulently stated in his applications that there was no incumbrance upon the real estate; second, that he fraudulently concealed from appellant the existence of mortgages on the real estate which were so large as to be material to the risks; third, that he swore falsely to material facts after the fire for the purpose of getting a settlement. Upon the trial of the case the jury returned a verdict in favor of appellee for the full amount of the two policies. To reverse the judgment based thereon, these appeals are prosecuted.

It is first insisted that the court erred in permitting appellee to testify in his own behalf after he had cross-examined appellant's witnesses upon new matter and thereby made the witnesses his own. This, it is contended, was in violation of subsection 3 of section 606 of the Civil Code, which is as follows: "No person shall testify for himself, in chief, in an ordinary action, after introducing other testimony for himself, in chief; nor in an equitable action, after taking other testimony for himself, in chief." Manifestly, this section has no appli-

cation to the state of case here presented. While the appellee did make appellant's witnesses his own by cross-examining them on new matter not brought out in their direct examination, he did not introduce their testimony in chief, but only on cross-examination. Appellant's counsel overlook the effect of the phrase "in chief;" that refers only to testimony given by a witness upon direct examination—not that which may be given on cross-examination, even though it relate to new matter. To give to the section the construction placed upon it by counsel for appellant would be to set a trap, even for attorneys of most extraordinary ability and skill, to say nothing of the ordinary practitioner. Under such circumstances an attorney would be afraid, upon cross-examination, to ask any questions, for he might find to his chagrin that it related to new matter not referred to in the direct examination, and that he was thereby robbed of his entire defense through his inability thereafter to introduce his own client. We, therefore, conclude that this contention of appellant is without merit.

It is next insisted that, inasmuch as the mortgage liens were equal to, if they did not exceed the value of the real property insured, appellant was entitled to a peremptory instruction on the ground that said liens were, as a matter of law, material to the risks. Even assuming this to be true, there was still left to the determination of the jury the question whether or not appellee falsely represented in the application that there were no incumbrances on the real estate, or whether or not he fraudulently concealed from appellant the existence of such liens. The rule in this state is that the insured has the right to assume that the company has made inquiries of him touching every material fact affecting the risk, and to avoid the policy it must be found, not only that the concealed matter was material, but that it was intentionally and fraudulently concealed. (Lancashire Insurance Co. v. Monroe, 101 Ky. 12.) So, too, if the insured gives correct answers to the only questions asked of him, and the agent who fills out the blank inserts in the application answers to questions not asked of the insured, and the insured signs the application without reading it or knowing of the false answers so inserted, he is not responsible for the answers so made. (Phoenix Insurance Co. v. Coomes, 14 Ky. Law Rep. 238.) In the case before us, appellant's agent had no distinct memory

of the transaction and relied solely upon the application, claiming that he wrote the answers to the questions as given him by appellee. On the other hand, appellee swears positively that he did not answer that there were no incumbrances on the real estate, and that he signed the application without knowing that it contained such answers. There is neither any direct proof nor any circumstances in the case going to show that appellee obtained the insurance for a fraudulent purpose; nor is there any evidence tending to show that he fraudulently concealed the existence of the mortgage liens. Indeed, the jury were justified in believing that he did not know the mortgage liens were material to the risk and only learned of that fact when he heard the matter discussed in court. In order for appellant to have been released on the ground of fraudulent concealment, the proof should have shown that appellee knew, or the circumstances were such that an ordinarily prudent person would know, that the existence of the mortgage liens was material to the risks. Even conceding, then, that the mortgage liens were as a matter of law material to the risks in question, it does not follow that appellant was entitled to a peremptory instruction because of that fact. The jury evidently believed that appellee did not answer that there were no mortgage liens upon the real estate and that he did not fraudulently conceal the existence of that fact.

When we consider the circumstances under which the affidavit after the fire was obtained from appellee, it is not surprising that the jury placed no stress upon this matter, which was fairly submitted to them in the instructions of the court.

While the instructions given by the trial court are not altogether free from criticism, we conclude that, upon the whole case, appellant's defenses were fairly submitted to the jury, and that its substantial rights were not prejudiced by the errors complained of.

Judgment affirmed.