## Aetna Life Insurance Co., et al. v. Rustin

(Decided February 4, 1913.)

Appeal from Jefferson Circuit Court.
(Common Pleas, First Division.)

1.  Insurance, Accident—Schedule of Warranties—Representations in—Issual of New Policies—What Assured Had the Right to Understand.—Where a policy of accident insurance was issued April 7, 1903, and on the corresponding date new policies were issued, or renewal receipts executed to take the place of the expiring policies, the schedule of warranties not being changed, except that the age of the assured was advanced one year, it was not new business, but simply a continuation of the business in force.

2.  While there is no evidence that any written application was ever made by assured, he must have furnished the information contained in the schedule of warranties in the original policy; and as these are copied verbatim in each succeeding policy, it is apparent that this was done by some one in the home office, without the knowledge or consent of assured.

3.  As the statements made by assured in 1903 were true, and as he was not called upon or required to make any additional statement, he had a right to understand that the policy was kept in force under the statement originally made by him. Therefore, the answers and questions in the schedule of warranties, apply as of April 7, 1903, and this being true there was no misrepresentation made by assured.

4.  Insurance, Accident—Issual of Policy—Action Upon—Defense— Absence of Evidence of Misrepresentation.—In an action upon an accident policy, there being no evidence that when the policy was issued any statement made by assured in order to procure it was not true or substantially true, it was properly held that no defense on the ground of misrepresentation had been made out. (For original opinion, see 151 Ky., 103.)

FRED FORCHT, JR., and EDWIN A. JONES, for appellant Fidelity and Casualty Co.; BENNETT H. YOUNG, MARION W. RIPY, TRABUE, DOOLAN & COX and KOHN, BINGHAM, SLOSS & SPINDLE, for other appellants.

WM. MARSHALL BULLITT, T. J. MAHONEY and BRUCE & BULLITT, for appellee.

RESPONSE TO PETITIONS FOR REHEARING, BY JUDGE SETTLE.

In the petition for rehearing it is pointed out that, in the opinion, we failed to pass upon one ground urged by appellant, Fidelity & Casualty Company of New York,

for reversal. This appellant, and the Casualty Company of America, set up, as a ground of defense, certain misrepresentations alleged to have been made by the assured, which were relied upon to defeat any recovery. This defense was fully considered when the case was before us, but, by oversight, no mention was made of it in the opinion.

The record shows that the Fidelity & Casualty Company of New York issued an accident policy on the life of Dr. Rustin for $10,000, on April 7, 1903. There appears on the back of said policy a schedule of warranties, in which is given the assured's name, age, height, weight, occupation, residence, beneficiary, and the following, "P. My habits of life are correct and temperate, except as follows: No exceptions." "A. I am in sound condition, mentally and physically, except as follows: No exceptions." This statement is not signed by any one, but, presumably was made by the assured to the agent sending in the risk of the company. On April 7, 1904, the company issued to the assured another policy for a like amount, on which was endorsed the identical statement as appeared upon the first policy, save that the age of the assured was advanced one year, his age being given as 34 instead of 33, as in the original policy. On each recurring April 7th the company sent to the assured, either a new policy to take the place of the expiring one, or a renewal receipt, continuing the old policy in force for one year from the date of its expiration. In none of these new policies was this schedule of warranties changed in any wise, except that the age of the assured was, each year, advanced one year. Thus matters continued until April, 1908, when the policy sued on became effective.

The record is silent as to what passed between the company and the assured at the different renewal periods, except as to the last, when the company, through its agents, on March 23, 1908, wrote the assured:

"We enclose herewith F. & C. accident policy No. 4219534 renewing your insurance expiring April 7th. We have renewed this contract under our latest form of policy, which is the most liberal of any contract now issued by any company. This is a very liberal policy and we thank you in advance for the renewal of same.

"Yours truly,

H. E. PALMER SON & Co.'

When this letter is read with, and in the light of the

manner in which previous renewals had been made, it is
apparent that the company itself did not regard this as
new business or a new risk, but simply as a continuation of
business then in force, and hence, properly referred to it
as renewing the policy expiring April 7, 1908, or more
than two weeks later. Again, it will be noticed that there
is nothing in the letter that would even suggest that the
policy had been applied for by the assured; but, on the
contrary, it plainly shows that no application had been
made for it. Coming to him under these circumstances,
the assured had a right to regard it as a renewal of his
insurance, which he had been carrying in the company,
since April 7, 1903; and this is, in fact, what it was. This
last policy contained the same schedule of warranties as
is found in the policy of April, 1903, even as to the resi-
dence of the assured, although the record shows that he
had changed his residence from Harney Street to Far-
num Street in May, 1907, or almost a year before the last
policy was issued. From an inspection of the several
policies, given in renewal of those expiring, it is appar-
ent that, when each renewal period arrived, some employe
of the appellant company would write up or prepare the
renewal policy, and in doing so, would copy from the
previous policy the schedule of warranties thereon. So
this accounts for the schedule of warranties on the last
policy being identical with that on the first, save as to
the age. This, as stated, was in each renewal, advanced
one year. The policy, when so prepared, was forwarded
to the assured with a statement that it was a renewal of
the policy then about to expire. As such it was accepted
by the assured. So, in determining the rights of the par-
ties, the question is, do we look to the warranties in the
original policy, or to those found in the last renewal,
which is the policy sued on? As stated, none of these
statements in the schedule of warranties is signed.
There is no evidence in the record that any written ap-
plication for insurance was ever made by the insured, but
undoubtedly he furnished the information found in the
schedule of warranties in the original policy; and, as
these are copied verbatim in each succeeding policy is-
sued, it is equally apparent that this work was done by
some one in the home office, without the knowledge or
consent of the insured. And, unless it can be said that,
by accepting said renewal policies he tacitly represented
to the company that the conditions were, at the date

when each renewal became operative, identically the same as when the original policy was issued, the position of the appellant company cannot be maintained, for there is no evidence whatever showing that any representation made in the schedule of warranties found upon policy of 1903 was not literally true.

Under the laws of Nebraska, as determined by the decisions introduced in evidence in this case, in order to be available as a defense, the misrepresentations relied upon must, first, be proven to have been made; second, that when made they were false, and known by the assured to be false; and third, that they were material. Considering these propositions in their inverse order, the statements by the assured: "My habits of life are correct and temperate, except as follows: No exceptions; and, I am in sound condition, mentally and physically, except as follows: No exceptions," were material to the risk; for the evidence shows that the appellant company would not have accepted the risk, had the statements showed the applicant to be as intemperate and immoral as the record in this case shows the assured to have been, for a few months prior to his death. The record further shows that these statements were made by the assured in 1903, and there is no evidence of their having been made by him at a later date, and when made in 1903 they were absolutely true. When made, the insurer relying upon them, issued the policy. Each renewal policy was issued, not upon any new statement of facts, but upon a statement of facts as they existed in 1903, when the first policy was issued. As the assured was not called upon, requested, or required to make any additional statement, and upon a reading of each renewal policy he saw that it was based upon the facts as they existed when the original policy was issued, he had a right to understand, and indeed any other would be a strained construction, that the policy was being renewed or kept in force under the statement originally made by him. To hold otherwise would put it in the power of the company, at renewal periods, to impose upon the assured conditions of which he was not advised and by which he did not intend to be bound. In order to hold the insured answerable for misrepresentations, it must clearly appear that the information was asked and that, in his answer, he failed to state the facts. In Continental Insurance Co. v. Ford, 140 Ky., 406, where there was an at-

tempt made to hold the assured answerable for certain statements made in the application, when it appeared that he had not answered the question as it was claimed, this court said:

"If the insured gives correct answers to the only questions asked him, and the agent who fills out the blanks inserted in the application answers the questions not asked of the insured, and the insured signs the application without reading it or knowing of the false answers so inserted, he is not responsible for the answers so made."

The reasoning for the rule announced in that case applies with greater force to the question under consideration; for, there the insured signed the application and avoided its effect upon a vital point by showing that it contained statements which he had not made; here, no application was presented to the insured, but he was advised by the company that the policy sued upon was but a renewal of a previously existing policy for a like amount. As the statement of warranties contained in this policy was copied from the original policy issued in 1903, we hold that the answers and questions in this schedule of warranties referred to, apply as of April 7, 1903, and not April 7, 1908. This being true, there was no misrepresentation and there is no merit in this defense. So much for the Fidelity & Casualty Company of New York.

There is even less merit in the defense of the Casualty Company of America. Its policy was issued April 21, 1907, and renewed by merely paying the premium at the expiration of the year or on April 21, 1908. No application was signed by the assured, indeed, none was presented to him, but the agent who wrote the business testifies that he asked the assured if the conditions were the same as in 1907, and that the assured said they were. Such a statement, if made, amounts to nothing, and cannot be dignified by giving it serious consideration. There being no evidence whatever that, when this policy was issued on April 21, 1907, any statement made by the insured in order to procure it was not true or substantially true, the court properly held that no defense on the ground of misrepresentations as to this company had been made out.