## Niagara Fire Insurance Company v. Layne.

(Decided February 11, 1915.)

## Appeal from Pike Circuit Court.

1. Insurance—Assignment or Other Transfer of Policy—Effect of.— The assignment of a policy of fire insurance by consent of the insurer creates a new and independent contract equivalent to the original issual of a policy by the insurer direct to the assignee.

2. Insurance—Avoidance for Misrepresentation—Grounds in General —Statutory Provisions—Effect of Misrepresentations.—Where one applying for insurance makes answer to inquiries or makes statements voluntarily, if the fact be material and the answer or statement untrue, Section 639 Kentucky Statutes applies, and this court has consistently held that the policy is avoided whether the applicant knew the answer or statement to be untrue or not and regardless of any fraudulent intent on the part of the insured. But where no inquiry is made and answered concerning encumbrances and no voluntary statement in regard thereto is made by the applicant, an avoidance of the policy will not be declared unless the insured has fraudulently failed to disclose the fact of an encumbrance material to the risk assumed by the company.

3 Insurance—Avoidance for Misrepresentation—Grounds in General —Fraudulent Concealment.—Failure to disclose the existence of a lien material to the risk is fraudulent when the insured has knowledge of the encumbrance and the facts are such that an ordinarily prudent person would have known that the existence of the lien was material to the risk.

4. Insurance—Avoidance for Misrepresentation—Grounds in General —Materiality.—An encumbrance (or other fact) is material to the risk when, with a knowledge of the truth, an insurer acting in accordance with the usual practice or custom among insurance companies would not have issued the policy.

5. Insurance—Actions on Policies—Questions for the Jury.—The question of the materiality of an encumbrance on the insured property is ordinarily one for the jury.

6. Insurance—Insurable Interest—Building on Lands of Another Than Insured.—Where one has erected a building on the lands of another, in the absence of an agreement to that effect, he has no right to remove it; and his right even to occupy such building having ceased, he had no insurable interest therein.

7. Insurance—The Contract—Construction and Operation—Entire and Severable Contracts.—Where no inquiry is made of the insured and his failure to disclose his want of insurable interest in one item of property covered by the policy was fraudulent, and the want of insurable interest in the one item was material to the risk on another item covered by the policy, the entire policy will be avoided.

8. Insurance—Notice and Proof of Loss.—Failure to furnish proofs of loss within the time required by the policy will not defeat an

action thereon; but the action cannot be maintained until proofs of loss are furnished; and if those furnished are insufficient and it is· the purpose of the insurer to defend an action upon that ground, it is incumbent upon the insurer to state to the insured clearly the grounds of its objections to the sufficiency of the proofs of loss as submitted.

HAGER & STEWART and JAMES SOWARD for appellant.

J. J. MOORE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

On November 2, 1911, the Niagara Fire Insurance Company by its standard form policy, insured M. B. Collinsworth for the period of one year, against loss or damage by fire in the amount of one hundred and fifty dollars on a building and eight hundred and fifty dollars on a stock of general merchandise therein stored, on Johns Creek in Pike county.

On February 6, 1912, Collinsworth sold the merchandise to appellee Layne for the sum of two thousand and fifty dollars, Layne executing to Collinsworth a mortgage on the merchandise and on a certain tract of land in Pike county, to secure the payment of the unpaid portion of the purchase price thereof, eighteen hundred and thirty-three dollars.

On February 15, 1912, at the solicitation and request of Collinsworth, the agent of the insurance company at Ashland in Boyd county, endorsed upon the policy the company's consent to the transfer of the policy by Collinsworth to Layne.

The building and its contents were destroyed by fire on October 11, 1912; and the fire insurance company having declined to pay the amount of the policy, Layne sued thereon in the Pike Circuit Court, and obtained a verdict and judgment in the sum of one hundred and fifty dollars for loss of the building, and five hundred and fifty dollars for loss of the merchandise. Layne had a policy in the same amount in another company, so that the verdict was for one-half of the loss as estimated by the jury; that is, the jury found the value of the building to be three hundred dollars and of the merchandise to be eleven hundred dollars, and returned a verdict against the Niagara Fire Insurance Company for one-half of said amounts. The insurance company appeals.

1. At the outset, it may be noted that where, as in this instance, a policy is by consent of the insurer as-

signed and transferred by the original holder thereof, a new and independent contract of insurance is created equivalent to the original issual of a policy by the insurer to the assignee. Home Insurance Company v. Allen, 93 Ky., 270, 13 R., 95, 14 R., 161, 19 S. W., 743.

2. It is contended by appellant company that there can be no recovery for loss upon the merchandise, because it was encumbered by the mortgage above referred to at the time of the transfer of the policy to Layne. The policy contained a stipulation to the effect that if the subject of the insurance be or become encumbered by a chattel mortgage, the policy should be void. It is insisted by appellant that the fact of the encumbrance was material, that it was not known to the company's agent at the time he consented to the transfer of the policy, and that it was not communicated to the agent at that time. It is conceded by appellant that its agent made no inquiries of Collinsworth at the time he procured consent to the transfer thereof, in respect of encumbrances on the merchandise.

So that primarily, the question presented is the effect of the failure of an applicant for insurance to communicate to the insurer the fact of an encumbrance on the property sought to be insured, where no inquiry is made concerning the subject, and where the policy has a forfeiture clause similar to the one sued on.

3. Section 639, Kentucky Statutes, provides that all statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; and that no misrepresentation unless material or fraudulent shall prevent a recovery on the policy.

And in Hartford Fire Ins. Co. v. McClain, 85 S. W., 699, 27 R., 461, it was said that this section of the statutes applies to the policy as well as to the application therefor, and that stipulations contained in the policy itself, as to title or interest, though not signed by the insured, amount to representations by the applicant of such facts. Language to the same effect is found in Wilson v. Germania Fire Ins. Co., 140 Ky., 642. But in both of these cases, the question of ownership of the insured property and not an encumbrance thereon was involved, and the insured were properly permitted to recover the value of their interest in the property. Hartford Ins. Co. v. Haas, 87 Ky., 531; Spalding v. Miller, 103 Ky., 414; American Central Ins. Co. v. Leake, 31 Ky. L. R., 1018; Wilson v. Germania Fire Insurance Co., 140 Ky., 646.

It may be conceded that if A obtains a policy of fire insurance on certain property, although he may not be asked a direct question concerning its ownership or may have made no direct representation in respect thereof, the fact of obtaining the policy itself amounts to a representation that he is the owner of the property.

But the obtaining of such policy would not amount to a representation that the property was unencumbered.

So that where no inquiry is made and answered concerning encumbrances on the property sought to be insured, and no voluntary statement is made concerning the existence or non-existence of encumbrances, there is no representation or statement in the application for the insurance which will render applicable Section 639, Kentucky Statutes.

4. Where one applying for insurance does make answer to inquiries, or makes statements voluntarily, this court has consistently held that Section 639 controls, and that if the fact be material and the answer untrue, the policy is avoided, whether the applicant knew the statement to be untrue or not and regardless of any fraud or intent to mislead or deceive the insurer. American Aid Soc. v. Bronger, 91 Ky., 406, 15 S. W., 1118, 11 R., 902; Mutual Life Ins. Co. v. Thompson, 94 Ky., 255, 22 S. W., 87, 14 R., 800; Union Central Life Ins. Co. v. Lee, 47 S. W., 614, 20 R., 839; Provident v. Dees, 120 Ky., 285, 27 R., 670, 86 S. W., 522; Illinois Life Ins. Co. v. De-Lang, 124 Ky., 569; Metropolitan v. Schmidt, 29 R., 255; Western & Southern v. Quinn, 130 Ky., 397, 113 S. W., 456; Briston v. Metropolitan, 115 S. W., 785; Provident v. Whayne, 131 Ky., 84, 93 S. W., 1049, 29 R., 160; National Protective Legion v. Allphine, 141 Ky., 777; K. of P. v. Bradley, 141 Ky., 334; Blenke v. Citizens Life Ins. Co., 145 Ky., 332, 140 S. W., 561. (Cases involving estopping knowledge upon the part of the insurance agent are of course necessarily excluded here.)

5. But where no inquiry is made and answered concerning encumbrances and no voluntary statement in regard thereto is made by the applicant for insurance, an avoidance of the policy will not be declared unless the insured has fraudulently failed to disclose the fact of an encumbrance material to the risk assumed by the company.

In Southern California Insurance Company v. Lucas, 15 R., 574, it was said: "An applicant for insurance, whether inquiry was made of him or not, was bound to

communicate all facts known to him and by him believed to be material, and his failure to do so must be regarded as a concealment; and it is to be presumed that he knew and believed what men of ordinary intelligence know and believe. Where a house and the sixteen acres of land upon which it was situated was worth only $1,700 and the house was insured for $1,000, the failure of the insured to disclose the existence of mortgage liens amounting to more than $700 was sufficient to invalidate the policy, although no inquiry was made as to encumbrances, as the insured must have known that after satisfying the mortgage liens his interest in the insured property would not be as much as the amount for which he was insuring it.''

In Fireman's Fund Insurance Co. v. Meschendorf, 14 R., 757, insured obtained a policy of insurance in the sum of $1,500 on property worth $2,200, and upon which there was a lien of $400. No inquiry was made of him concerning encumbrances. The court in that case said, ''The rule is that when no inquiries are made, the intention of the assured becomes material; and to avoid the policy it must be found not only that the matter was material but also that it was intentionally and fraudulently concealed.''

In Lancaster Insurance Co. v. Monroe, 101 Ky., 12, 39 S. W., 434, 19 R., 204, the property was encumbered by a mortgage, the existence of which was not disclosed by the insured, no inquiries having been made of insured by the agent of the insurance company concerning encumbrances. In that case the court said:

''The case, therefore, is one where without inquiry as to any mortgage, the company accepts the money of the insured, prepares its own policy, and issues it. It seems to us that the insured has the right to assume that the company has made inquiries of him touching every material fact affecting the risk, and if he does not scrutinize the multitude of conditions and stipulations with which he finds his policy shingled over, he only risks the avoidance of his policy if it turns out that he has failed to disclose what is in fact material, and what he ought to have known to be material to the risk assumed by the company. We think this is the effect of the later decisions of this court as it is certainly the trend of the authorities generally. In May on Insurance, Section 207, it is said: 'Where no inquires are made, the intention of the assured becomes material; and to avoid the policy

it must be found not only that the matter was material, but also that it was intentional and fraudulently concealed.' "

In Sun Mutual Insurance Company v. Crist, 39 S. W., 837, 19 R., 305, no inquiry was made of the insured in regard to the several matters covered by stipulations in the policy, and the court reaffirmed the language above quoted from the Monroe case.

In Phoenix Insurance Company v. Phillips, 16 R., 122, no questions were asked the insured concerning the title of the land upon which the insured building was situated; and the court quoted the language of the Meschendorf case, *supra:* "Where no inquiries are made, the intention of the insured becomes material, and to avoid the policy it must be found not only that the matter was material but also that it was intentionally and fraudulently concealed."

In Continental Insurance Company v. Ford, 140 Ky., 406, 131 S. W., 189, the evidence was conflicting as to whether inquiry had been made by the insurance agent, of the insured, concerning the existing of liens on the insured property. And following the Monroe case, *supra,* the court said that conceding the existence of the liens to be material to the risk assumed by the company, it was for the jury to determine whether, if insured did conceal the existence of liens, no inquiry having been made in respect thereof, such concealment was fraudulently made.

From these authorities, it will be seen that the rule in this State is that if no inquiry is made and answered concerning encumbrances, and no voluntary statement is made by insured in regard thereto, the failure to disclose the existence of encumbrances on the property sought to be insured will not be ground for an avoidance of the policy, unless (1) the insured fraudulently failed to make such disclosure, and (2) unless the encumbrance was material to the risk assumed by the company.

6. Such failure to disclose the existence of a lien material to the risk is fraudulent when the insured has knowledge of the encumbrance and the facts are such that an ordinarily prudent person would have known that the existence of the encumbrance was material to the risk. (Ford case, *supra.*)

7. An encumbrance (or other fact) is *material* to the risk when, with a knowledge of the truth, an insurer acting in accordance with the usual practice or custom

among insurance companies would not have issued the policy. (U. S. H. & A. I. Co. v. Jolly, 118 S. W., 281.)

8. It is contended by appellant company that the existence of the mortgage on the stock of merchandise was, as a matter of law, material to the risk.

This court has in some cases undertaken to hold as matter of law that certain encumbrances under a certain state of case, were or were not material to the risk. See Phoenix Insurance Company v. Coomes, 13 R., 238, 14 R., 603, 20 S. W., 900; Meschendorf case, *supra;* Lucas case, *supra,* Springfield F. & M. Ins. Co. v. Phillips, 16 R., 390.

But, as the court in Provident Savings Life Assur. Co. v. Whayne, 131 Ky., 84, indicated, the question of materiality is generally one for the jury. In that case is quoted the following language from the opinion of Taft, J., in Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank, 72 Fed., 413, 38 L. R. A., 33:

"A fair test of the materiality of a fact is found in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against. The best evidence of this is to be found in the usage and practice of insurance companies in regard to raising the rates or rejecting the risk on becoming aware of the fact."

This is substantially the same definition of "materiality" as that given above, quoted from the Jolly case. A brief consideration of the matter will demonstrate that it would be an exceptional case in which the materiality of a fact stated or concealed by an applicant for insurance could be disposed of as matter of law.

In the case at bar, Layne bought the stock of merchandise from Collinsworth at the price of $2,050, giving him a mortgage thereon and also on a tract of land, to secure the sum of $1,833. And the materiality of this encumbrance is a matter to go to the jury upon proper evidence of the usage and custom of insurance companies.

9. It is next contended by appellant that appellee was not entitled to a recovery for the loss of the building. The facts appearing in the record concerning this building are these.

In June, 1909, W. H. Justice sold to the Catlettsburg Timber Company certain timber standing upon a tract of land owned by him on Johns Creek in Pike county,

and the timber company proceeded to cut and remove the timber so purchased. In connection with the operation, a commissary store was desirable, and Collinsworth who was president of the company, erected the building and conducted a store therein during the continuance of the logging operations.

In the writing conveying the timber there is no authority given for the erection of this house, and Justice, the owner of the land on which the building stood, testified that he had no recollection of ever having given permission for the erection of this building upon his land; that he had no agreement, verbal or otherwise, as to how long it should be permitted to remain there; that he learned a short time after its erection, however, that it was there. It does not appear that he ever made any objection to Collinsworth concerning the erection of this building on his land.

According to the testimony of Justice, the entry of Collinsworth and erection of this building was the act of a mere trespasser, and continued to be impressed with that quality, unless it be said that by implication of law, the failure of Justice to make objection after he learned of the erection of the building, created a tenancy at will. Justice in his testimony declined to admit that Collinsworth was to have the privilege of removing the building.

So, from the standpoint of the testimony of Justice, Collinsworth was never anything more than a tenant at will, and by virtue of Section 2292, Kentucky Statutes, the attempted transfer by Collinsworth to Layne on February 6, 1912, of the building in question, would, under this state of case operate as a forfeiture to Justice.

On the other hand, Collinsworth testified that he told Justice that the timber company wanted to build a store-building and a barn and some camps, and proposed to Justice that the latter should make no charge for the timber used in erecting these buildings, in consideration of which concession, the timber company would erect good buildings and let them remain on the land after the operations were completed; and that Justice said he did not want the buildings on his land as people would be after him continually, wanting to rent them, and he "would be bothered with having to let people live on his land if these buildings were there;" that Justice required the timber company to pay him for the timber used in the erection of the buildings. On being asked as to whether he talked with Justice about leaving the buildings on the

land after the logging operations were completed, Collinsworth replied that "I don't know that I did."

So that from the standpoint of the testimony of Collinsworth, he had nothing but the right to use the building during the continuance of the logging operations of the Catlettsburg Timber Company, and that period had expired on February 6, 1912, the date on which Collinsworth sold out to Layne. In fact Collinsworth in his testimony seems to concede this, as he says there was no price fixed on the building when he sold out to Layne, and Layne swears that Collinsworth "just throw'd in the buildings."

It is suggested by appellant that the right claimed by Collinsworth, being a contract of lease for a term longer than one year, is within the purview of sub-section 7 of Section 470, Kentucky Statutes (the Statute of Frauds and Perjuries). But, as the timber purchased by the timber company might have all been removed within a year, the statute is not applicable; and in addition, the Statute of Frauds is available only to parties directly sought to be charged. Crawford v. Woods, 6 Bush, 200; Clary v. Marshall, 5 B. M., 266; Oldham v. Sale, 1 B. M., 76; Bohannon v. Pace, 6 Dana, 194; Jacob v. Smith, 5 J. J. M., 380; Nelson v. Forgey, 4 J. J. M., 569; Bennett v. Tiernay, 78 Ky., 580; Harding v. Harding, 140 Ky., 277; Walker v. Walker, 19 R., 628; Elliott v. Scoville's Assignee, 144 Ky., 584, 139 S. W., 806.

Collinsworth, in the absence of an agreement to that effect, had no right to remove the building erected by him on the lands of Justice. Gudgell v. Duvall, 4 J. J. M., 229; Gray v. Oyler, 2 Bush, 256; Guthrie v. Guthrie, 78 S. W., 474, 25 R., 1701; W. S. R. Co. v. Wenner, 127 A. S. R., 806; and see note to Cleveland v. Clark. 81 A. S. R., 181.

And, as the logging operations of the Catlettsburg Timber Company had been completed on February 6, 1912, according to the evidence in this record, he no longer had even the right to occupy it. It is true that an effort appears to have been made to show that there remained on the Justice lands a few trees which were branded at the time of the selection and branding of the trees purchased by the timber company from Justice; but in point of fact, their operations on that land had come to an end. The company never did cut or remove any timber from that land after February, 1912; and during the early spring of 1912 removed its entire plant and equipment to another county.

Appellee, therefore, had no insurable interest in the building; and lacking insurable interest, he cannot recover for the loss of the building.

10. Appellant further contends that the insurance contract is not severable, and being void as to the building, it is also void as to the stock of merchandise.

But, as in the matter of the encumbrance on the merchandise, appellee made no statement in regard to the nature of his claim to the building, when the policy was assigned to him by consent of the insurance company; and the company's agent made no inquiry concerning the matter.

If the insured building had not been the same one in which the insured goods were stored, we think there could be no question that the contract would be severable; but in this present case, the insured merchandise was stored in the insured building, and appellee had no insurable interest in the building.

In such case, we think the true rule is that if appellee's failure to disclose the nature of his claim to the building, was fraudulent, and the fact in respect to the nature of his claim to the building was material to the risk on the merchandise, then the entire policy would be avoided.

We understand this to be the underlying doctrine of Phoenix Insurance Co. v. Lawrence, 4 Metc., 9, 81 Am. Dec., 521; at least it seems a sound rule, where no inquiry was made of the insured concerning the fact constituting the basis of avoidance.

11. It is also contended by appellant that proof of loss was not furnished to appellant by appellee within the time required by the terms of the contract.

In this State, the failure to furnish proofs of loss within the time stipulated in the contract is not ground for defeating a recovery on the contract; but the furnishing of proofs of loss is a condition precedent to the maintaining of an action to recover thereon. Continental Casualty Co. v. Waters, 97 S. W., 1103, 30 R., 240; Gragg v. Home Ins. Co., 90 S. W., 1045, 28 R., 988.

12. It is further contended by appellant that the proofs of loss that were finally furnished were not a compliance with the stipulations of the contract in respect thereof.

It appears from the record that appellant company acknowledged the receipt of proofs of loss by appellee, and in the letter of acknowledgment, said:

"We desire to call your attention to conditions of the policy which require that sworn statement in proof be filed within sixty days from the date of the fire, which was not done. See lines numbers 69 to 80 inclusive, of the policy conditions, which read as follows. (Here follow the policy stipulations as to what must be shown in the proofs of loss.) For this and other good and sufficient reasons, these papers cannot be accepted as a satisfactory compliance with the policy conditions."

Upon receiving this communication, appellee conceiving it to be a denial of liability upon the ground that the proof of loss was not furnished within sixty days, addressed a letter to appellant saying: "I assume from this that you deny liability and do not intend to take further action toward adjusting this loss."

Under this state of case, we think if appellant company desired to have the benefit of an objection to the sufficiency of the proofs of loss, it was its duty to have stated to appellee that the proofs furnished were not satisfactory, not only because not furnished within the sixty days, but also because they did not contain all the information required by the stipulations of the policy.

The insufficiency of the proofs of loss does not operate to relieve from liability, but only to withhold the right to maintain an action on the policy; and the matter not being one vital to the substantial rights of the insurance company, we think a clear statement of the grounds of its objection to the proofs of loss was necessary in order to render available such objections after action is instituted.

The instructions complained of by appellant were erroneous as they were in substance a peremptory direction to find a verdict for the plaintiff. Appellant offered a number of instructions covering the several points raised by it upon this appeal; but we deem it unnecessary to discuss them further than to say that upon another trial, the court in instructing the jury, should the facts remain the same, will be governed by the principles laid down in this opinion; viz.: (a) the assignment of a policy by consent of the insurer creates a new contract of insurance equivalent to the original issual of a policy direct to the assignee; (b) the fact that an assignee obtains the consent of the company to the assignment of the policy does not amount to a representation that the property was unencumbered; (c) if no inquiry concerning encumbrances has been made and answered and no vol-

untary statement in respect thereto has been made by the insured, Section 639, Kentucky Statutes, is not applicable; (d) where the applicant for insurance does answer inquiries or make voluntary statements, Section 639 controls, and if the fact be material and the answer or statement untrue, the policy is avoided whether the applicant knew the statement to be untrue or not and regardless of any intent to mislead or deceive the insurer (in the absence of estopping knowledge upon the part of the agent); (e) but where no inquiry is made and answered concerning encumbrances, and no voluntary statement in regard thereto is made by the applicant for insurance, an avoidance of the policy will not be declared unless the insured fraudulently failed to disclose the encumbrance, and it was material to the risk; (f) failure to disclose the existence of an encumbrance material to the risk is fraudulent when the insured has knowledge of the encumbrance, and the facts are such that an ordinarily prudent person would have known that the existence of the encumbrance was material to the risk; (g) an encumbrance, or other fact, is material to the risk when with a knowledge of the truth, an insurer acting according to the usual practice or custom among insurance companies would not have issued the policy; (h) materiality is generally a question for the jury; (i) where two items of property are insured by one policy, and the insured has no insurable interest in one of the items, if his failure to disclose his want of insurable interest, no inquiry being made in respect thereof, was fraudulent, and the fact of his want of insurable interest in the one item was material to the risk on the other item, then the entire policy will be void; (j) failure to furnish proofs of loss within the time required by the policy will not defeat liability, but the furnishing of proofs of loss is a condition precedent to the maintaining of an action on the policy; (k) the insufficiency of proofs of loss or their failure to conform strictly to the requirements of the policy as to the information therein to be exhibited, will not defeat liability, but will operate to suspend the right to maintain an action on the policy; (1) where proofs of loss are furnished, if it is the purpose of the insurance company to defend an action on the policy upon the ground of the failure of the proofs of loss as furnished to conform to the requirements of the policy stipulations in respect thereof, a clear statement of such grounds of objections as it contends are competent should be made to the insured.

The judgment appealed from is reversed and remanded to the trial court for proceedings in conformity with the views herein expressed.