**Kronenberg v. American Insurance Company.**

**Same v. Providence Washington Insurance Company.**

**Same v. St. Paul Fire & Marine Insurance Company.**

(Decided April 30, 1929.)

LLEWELLYN F. SINCLAIR for appellant.

FRANK M. DRAKE and FORD & FORD for appellees.

Opinion of the Court by Commissioner Stanley—
Affirming.

These three cases, by agreement, have been tried and considered together, since they involve the same facts and the contracts upon which they are founded are similar.

The American Insurance Company issued its policy dated January 30, 1926, insuring appellant's stock of goods at Hinton, Scott county, in the sum of $500, and the building containing the goods in the sum of $500. The St. Paul Fire & Marine Insurance Company issued its policy dated February 20, 1926, insuring the same stock of goods for $1,500 and the store furniture and fixtures in the building for $1,000. The Providence Washington Insurance Company, on March 3, 1926, issued its policy for $1,000 on the building, and $1,000 on the stock. The building was therefore insured for $1,500; the fixtures for $1,000; and stock and merchandise for $3,000. About midnight, March 17, 1926, the property covered by these policies was totally destroyed by fire. Each of the policies contained this clause:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss."

The companies successfully relied on these provisions to defeat recovery.

The evidence in behalf of appellant was that he is a native of Poland, naturalized in 1908, and had engaged in the jewelry and mercantile business in Chicago and Dayton, Ohio, excepting the time he was in the army during the World War, until he came to Hinton, Ky., in January, 1926. His brother-in-law, Robert Skoll, had

been engaged in the mercantile business in that village until he was dispossessed of the store building occupied by him not long before Kronenberg came there, when he moved his stock to his residence. Skoll owed Kronenberg $300, and when he came, as he says, to collect his debt, Skoll proposed to sell him the merchandise, suggesting that there was a good opening for a general store at Hinton. About this time an old schoolhouse in or near the village was placed on sale at auction, and Kronenberg had some one buy it for him for $510. He bought Skoll's merchandise and fixtures for $3,300, which they claim was $500 less than invoice price. He then paid him $700 in cash and credited him with the amount of the indebtedness, leaving $2,300, which he agreed to pay May 1, 1926. Appellant and Skoll went to Cincinnati, where they say, ''Schwartz was putting on a big sale,'' and Kronenberg bought a bill of goods there for $495.25, which he says was worth more than $1,000. He bought a lot of secondhand furniture from I. Heltzer for $166, and another lot from Max Cohen & Son for $90, all of which he says was worth over $1,000. Kronenberg admitted that he had obtained from Heltzer an invoice of the same goods showing the price to be $1,589, which he says was for the purpose of enabling him to collect a sum of money due by a cousin in Chicago by showing this cousin how much money he had to raise. Kronenberg placed the value of his stock as being between $6,000 and $7,000 at the time of the fire. He testified that he was in Chicago when his house burned and had been there about 10 days. Skoll, who came to Hinton in 1924 after having lost his stock of merchandise at Stewartsville, Ky., by fire, and who could not secure any insurance, substantially corroborated his kinsman. The cross-examination of appellant and Skoll developed material contradictions and casts great suspicion on the correctness of the inventory of goods sold to the one by the other, as well as to the interest of Kronenberg in the personal property.

When Kronenberg and Skoll went to a lawyer in Cynthiana to have a bill of sale prepared, appellant was solicited for insurance by the attorney's daughter and partner in an insurance agency, and she and another agent went to Hinton and inspected the building and contents after he had bought the goods in Cincinnati. The value of the merchandise, as placed by appellant and his witness, was from $4,000 to $7,500.

On the other hand, it was shown in behalf of the insurance companies that the entries in a book from which appellant testified the inventory of Skoll's stock was made had been prepared one year before Skoll quit business. Skoll testified that it was made up by his 13 year old son shortly before the sale; but it was shown he had on another occasion stated it was made by Sol Kroon in August previous to that time. The proof for defendants was that it was not made by either of them. Witnesses introduced by the companies testified that Skoll's entire stock and fixtures were not worth over $500.

Heltzer testified that he sold Kronenberg and Skoll a bill of goods for $166, but Kronenberg had obtained from him a duplicate of the bill with different prices, aggregating $1,589, saying he wanted to have a big sale and get big prices, and, if anybody should ask how much he had paid for the stuff, that Heltzer should show him the fictitious bills. Cohen testified that Kronenberg had told him if inquiry were made to tell that he had sold him $300 worth of goods, saying that he was going to sell the furniture to a farmer who was opening up a hotel. He did not remember whether he gave appellant a bill showing the increased prices or let him have one of his billheads. Skoll gave his checks to the Cincinnati merchants.

Miss Mary Peterson, a member of the Peterson Insurance Agency, represented the American Insurance Company. She testified that she and a representative of another company (not herein involved), examined the stock of goods, which was then disarranged in packing boxes, and that she was told by Kronenberg that he intended to enlarge his stock of furniture and for that reason wanted an unusually large coverage. He applied for the insurance on January 29th, on which date the American policy was written by her agency, and at her request the other policies were issued by different agents. She delivered the American Company's policy by mail, and delivered that of the Providence Washington Company in person to appellant at her office on Tuesday, the day before the fire. He told her that day he was on his way to Cincinnati; and, although Kronenberg testified he had been in Chicago ten days before the fire and was there when it occurred, the railroad agent at Hinton testified on that morning he sold him a ticket for Cincinnati.

Skoll was in charge of the store until it was closed about 5 o'clock the afternoon before the fire.

From this elaborate review, it can readily be seen that there was ample evidence to take the case to the jury on the question of fraudulent representations and misrepresentations of material facts regarding the value and ownership of the merchandise and fixtures. The evidence abundantly supports the verdict of the jury as to these items, and appellant's argument that he was entitled to a peremptory instruction is untenable.

The only evidence supporting appellees' claim as to misrepresentation with respect to the building is that Kronenberg concealed the fact that he had bought the property a short time before the policies were issued for $510. Appellant proved that his was the only bid made at the sale and that the property was worth $1,500 to $1,800. This was not sufficient evidence of fraud to mislead the insurers in placing the values on the building fixed in the policies and to enable them to defeat recovery on that ground. Kentucky Statutes, sec. 762a22; Kentucky Live Stock Ins. Co. v. McWilliams, 173 Ky. 92, 190 S. W. 697; Queen Ins. Co. v. Cummins, 206 Ky. 300, 267 S. W. 144; Continental Ins. Co. v. Ford, 140 Ky. 406, 131 S. W. 189. The court, therefore, did not err in refusing to submit that element to the jury.

He did, however, submit the issue as to fraud and misrepresentation relating to the personal property affecting the insurance of the building, which appellant insists was error. The court instructed the jury that, if they should believe from the evidence that the plaintiff obtained the policies on the stock of goods and fixtures by fraud or misrepresentation or the concealment of some fact with reference to the personal property, and that such fraud, concealment, or misrepresentation, if any, with reference to the personal property, was material to the risk assumed upon the building, then the jury should find for the defendant as to the insurance on the storehouse. It was proved by the appellees that well-managed insurance companies doing business in that locality would not have issued the policy on the building had the true facts been stated. The question, therefore, is whether fraud or material misrepresentation of facts in obtaining a policy of insurance on the contents of a building sufficient to defeat recovery for their destruc-

tion also invalidates the insurance on the building covered by the same policy, concerning which particular risk there was no fraud or misrepresentation. The quoted provision of the policies as to the effect of guilty action on the part of the insured relates to the policy as a whole (except as limited by statute), and its applicability to the state of facts is dependent upon whether the contract is entire or severable.

In Ohio Valley Fire & Marine Ins. Co.'s Receiver v. Skaggs, 216 Ky. 535, 287 S. W. 969, the opinion points out the different rules of construction in this regard as applied by the courts. We quote:

> "Rule 3 seems to take a middle ground, between the extreme doctrines of these rules, and holds that the question of the severability of the contract depends upon the nature of the risk. That is, that where the property is so situated that the risk on one item cannot be affected without affecting the risks of the other items, the policy must be regarded as entire; but where the property is so situated that the risk on each item is separate and distinct from the risk on the other items, so that what affects the risk on one item does not affect the risk on the others, the policy must be regarded as severable. A number of cases will be found in 14 R. C. L. 941, and in the notes published in 38 Am. Rep. 230; 8 L. R. A. 834; 51 L. R. A. (N. S.) 1051; 2 Ann. Cas. 24; Ann. Cas. 1912C, 989; 19 L. R. A. 215; and 26 C. J. 65, 101, 235.
>
> "Under Rule 3, which appears to have been the rule followed in this state, if a building and the furniture or contents therein are insured and there is a breach of condition respecting one item, this relieves the insurer from liability for all, as the breach of the condition increases the hazards as to all items. The plaintiff's want of title to the storehouse increased the hazard as to it. The risk upon its contents was inseparable from the risk upon the building, and the increase of hazard to the building necessarily affected the contents. This contract was therefore not severable, and being void as to the building, it is void in toto. Niagara Fire Insurance Company v. Layne, 162 Ky. 665, 172 S. W. 1090; Springfield Fire & Marine Ins. Co. v. Phillips (16 Ky. Law Rep. 352) 16 Ky. Law Rep. 390."

In Niagara Fire Ins. Co. v. Layne, 162 Ky. 665, 172 S. W. 1090, similar conditions existed and the same contention was made. Said the court respecting it:

> "If the insured building had not been the same one in which the insured goods were stored, we think there could be no question that the contract would be severable; but in this present case the insured merchandise was stored in the insured building, and appellee had no insurable interest in the building."

The converse condition is presented here, in that the misrepresentation and fraud related to the contents and not to the building; but there is no difference in principle between this case and those cited. It follows, therefore, that the instruction was proper.

It is insisted by appellant, however, that section 762a22 (which was formerly section 700 of the Statutes) prohibits the interposition of this defense of material misrepresentation relating to the building. That section of the statute applies only to the amount of the recovery, fixing it at the full value stated in the policy, and does not apply to fraud or misrepresentation with respect to the issuance of the policy. The purpose of the law is to prevent the evil of overvaluation. Caledonia Ins. Co. v. Cooke, 101 Ky. 412, 41 S. W. 279, 19 Ky. Law Rep. 651; 14 R. C. L. 1306.

The judgments are therefore affirmed.