## Southern Mining Company v. Clayton.

(Decided May 20, 1930.)

N. R. PATTERSON for appellant.

LOW & BRYANT for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellee, Charles F. Clayton, is a physician and surgeon. The Southern Mining Company is a corporation engaged in the production of coal. Dr. Clayton was the mine physician employed by those working for appellant. The employees of appellant who had selected Dr. Clayton as the mine physician voted to dispense with his services in February, 1929, and gave him notice to that effect. He was residing in a house belonging to appellant which had been provided for the use of the mine physician. When the employees dispensed with the services of Dr. Clayton, he questioned their right to do so before June 1, 1929, and he continued to occupy the house belonging to appellant. A forcible detainer proceeding was instituted before the county judge, and, as the result of the trial, Dr. Clayton was found guilty of the forcible detainer complained of, but he appealed to the circuit court where a different result was arrived at, and appellant has appealed from the judgment in the circuit court.

A brief statement of the facts is necessary. Appellee was employed as far back as September, 1912, by the employees of appellant. Some time during the following year he entered into the possession of the premises now in dispute. He continued to serve as mine physician until February 28, 1929. He had no written contract with the employees except for the year beginning June 1, 1922, and ending June 1, 1923. The contract was never renewed, and appellee continued his services in the same way that he had performed them before the making of the written contract, and the same as he performed them during the existence of that contract. He had no contract of any kind with appellant which permitted him to occupy the place he is now charged with unlawfully holding. On February 28, 1929, the employees served notice on the superintendent of appellant that after that date appellee would not be employed by them, and that appellant was not to deduct from their wages any sum to pay him. At the same time the employees notified

appellee that he was no longer an employee of theirs, and that all payments to him as mine physician would cease. A few days thereafter appellee notified the committee representing the employees that his contract would not expire until June 1, 1929, and that he would continue to perform the services under his contract and would be at his office for that purpose. He claimed, in his counter notice, that his contract was to run from year to year, and that it could no be terminated in the middle of the year, and that he would insist that appellant deduct from the wages of the employees the amount stipulated in the written contract of June 1, 1922. Appellant, on March 7, 1929, notified appellee to vacate the premises in dispute within thirty days, and on April 6, 1929, he having failed to comply with the notice, took out the forcible detainer proceedings.

The trial court gave a peremptory instruction to find for appellee, basing his ruling on the case of Reck & Riehl v. Caulfield, 129 Ky. 695, 112 S. W. 843. It was the opinion of the trial court that the tenancy was one from month to month, and, if that was true, of course the principles announced in the case cited were controlling.

The first question confronting us is to determine the nature of the tenancy. Appellee had no contract with the appellant. He was exclusively the employee of the employees of appellant. At the time of his employment, he was advised fully by appellant as to the situation. He was advised by appellant that it charged the miners a customary price, usually at the rate of $1 per month for a family and 50 cents a month for a single man, but that the charge was subject to the control and regulation of the employees. He was advised that appellant made no charge for a physician except under the instructions of the employees. It is made to appear, in the letter written to appellee by the superintendent at that time, that the deduction which would be made from the wages of the men to pay him was under the control of the employees themselves. The concluding paragraph of the letter was in this language:

"The employees at the mines shall also elect the doctor before we shall make a charge against them for a physician, and a majority of the employees must be in favor of a certain physician. At all times

the physician shall be at the disposal of the employees by a majority vote. The company does not stand in any way responsible for the physician at the mines, please reply if terms acceptable.''

It appears that appellant had either owned or leased a certain dwelling house that was kept for the use of the physician who should be employed as the mine physician. It made no contract with the physician, but deducted from the amount which it paid to him for the men rent each month for the house so occupied. There is nothing to show that the physician rented the house for a month, year, or any other definite time. Through a general arrangement or understanding with the employees, they were given the right to employ a physician, and appellant furnished him a place to live while he was so employed. The contract made with the employees by the doctor for one year from June 1, 1922, was an arrangement between the employees and the physician and was to terminate at the end of the year. Appellant had nothing to do with that contract other than to deduct from the wages of the employees as they might direct. The whole matter was made clear to the appellee when he went to the mine to take up his duties as mine physician. He was advised by appellant that its entire actions in so far as he was concerned would be governed by orders received by it from its employees. When he went into the house as the mine physician, he knew that his tenure was dependent upon the orders of the men. He had no agreement that he was to remain for any length of time. He could stay only so long as the employees continued his employment as mine physician, and, when the men should dispense with his services, his right to occupy the house by every fair inference was to terminate. Appellant could pay him nothing except as the employees might direct, and, when they notified appellant that it should not deduct anything further from their wages to pay the physician, that ended the matter so far as his receiving pay through appellant was concerned, because he was so advised before he went there.

To reduce the matter to its simplest terms, appellant authorized its employees to select a physician, and by acquiescence, if not by actual contract, it allowed the physician so employed to remain in the house while he was physician for the employees. When his services as

physician were terminated by the employees, then his right to occupy the house ceased. It was not in the nature of a tenancy from time to time, and neither was it a continuing contract. It was an implied contract from all the circumstances that the physician might reside in the house until the employees terminated his services, and that could be done by a majority vote at any time, and when that was done his tenancy was terminated. After it was terminated, he had no right to remain on the premises, and notice by the men of the termination of his employment was notice of the termination of his tenancy, and no notice to him was necessary by the appellant, because the appellant had allowed the employees to act as its agent so far as the house was concerned in making all of the arrangements with the physician. The possession of the house in which the doctor lived was subject to the control of the employees, and the authority which the doctor had to enter the house came through the employees and not through the appellant, except as the appellant vested in the employees the right to dispose of the possession of the house. It is true that appellee paid rent to appellant, but that was through the arrangement which he had made with the employees. He had no right there at all except the right given to him by the employees, and the notice to him by the employees on February 28 was a notice that his tenancy was terminated. The subsequent notice given by the company need not be taken into consideration at all. His right to occupy the house was wholly dependent on his employment as physician, and notice that his services had been dispensed with in that respect was notice to him that it was necessary for him to vacate the premises. It makes no difference, therefore, what was the nature of his tenancy, as he had sufficient notice if he be treated as a tenant at will, or by sufferance. The notice which was given to him by the company appears to have grown out of some talk that he had with the company to the effect that it would would require thirty days or more for him to get out.

This conclusion renders it unnecessary for us to determine whether the contract that the physician had with the employees continued until June 1, 1929. He knew that, so far as appellant was concerned, his right to represent them continued only so long as they advised appellant that he was their physician, and, when they

626

advised appellant on February 28, 1929, that he was no longer their physician, he knew that appellant was bound to accept that notice and act upon it. In so far as any connection he had with appellant was concerned, it was terminated when the employees gave that notice, and there is nothing that he could have done to compel appellant to deduct from the wages of the employees to pay him, as he had been advised that all deductions must be made in accordance with the orders which appellant received from the employees. As to whether he has any rights against the employees is a different question.

We have reached the conclusion, under the facts and circumstances, that the trial judge should have instructed the jury to return a verdict in favor of appellant.

Judgment reversed, and cause remanded for proceedings consistent with this question.