## Great American Insurance Company of New York v. Clayton.

## North River Insurance Company of New York v. Same.

## American Insurance Company of Newark, N. J. v. Same.

(Decided Nov. 25, 1932.)

(As Extended on Denial of Rehearing March 10, 1933.)

N. R. PATTERSON and F. M. DRAKE for appellants.

LOW & BRYANT for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee in each of the above-styled cases was a mine physician at Balkan, Bell county, Ky. He owned an X-Ray machine and other equipment which was located in a building occupied by him as an office and leased from the Southern Mining Company. On March 28, 1929, the American Insurance Company of Newark, N. J., and the North River Insurance Company of New York, each issued to him a fire insurance policy against loss to the personal property located in the building occupied by him as an office. On March 31, 1929, the Great American Insurance Company of New York issued to him a fire insurance policy for $2,500 on the same property.

The building in which the insured property was located was burned on the night of July 10, 1929, and the personal property located therein was totally destroyed. Each of the insurance companies denied liability, and Dr. Clayton brought suit against each of them in the Bell circuit court. They defended on the ground that the insured had violated the following condition which appears in each of the policies:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof."

The cases were tried together, and at the conclusion of all the evidence both the plaintiff and defendant in each case moved for a peremptory instruction. The court overruled the motions of the defendants and sustained the motion of the plaintiff in each case. The defendants have appealed and the cases have been heard together in this court.

The facts developed on the trial are as follows: Dr. Clayton had been the mine physician at the plant of the Southern Mining Company at Balkan, Ky., since

1912, under a contract with the employees of that company. Under the contract the miners agreed to pay him a specified amount each month, which was to be deducted from their wages by the company and paid to Dr. Clayton. Dr. Clayton occupied a residence at the camp which he leased from the company, and the building which he occupied as an office was located about 300 feet from his residence. The miners became dissatisfied with the arrangement, and in February, 1929, they held several meetings. They submitted a new contract to Dr. Clayton which provided for a lower rate of compensation and which he refused to sign. The miners then notified the company that they had discharged Dr. Clayton as the mine physician and directed it not to deduct any sum out of their wages to be paid to him subsequent to the month of February, 1929. Early in the month of March the company notified Dr. Clayton to vacate the building occupied by him as a residence and also the one occupied by him as an office. He took the position that his contract with the miners did not expire until June 1, 1929, and refused to surrender possession of the buildings. On April 6, 1929, the company instituted a forcible detainer proceeding which eventually found its way to this court. Southern Mining Company v. Clayton, 235 Ky. 621, 32 S. W. (2d) 3.

Considerable feeling developed among the miners against Dr. Clayton on account of his refusal to accept a reduction in his salary or to surrender the buildings occupied by him so that the miners could employ another physician, and early in March he was informed that threats were being made against him by the miners. He conferred with three of his friends who were physicians in regard to these threats, and they advised him to protect himself by taking out additional insurance on his personal property. He had been carrying a $2,500 policy in the Great American Insurance Company of New York since 1923. This policy expired on March 31, and had been automatically renewed each year. He went to the agent of this company and applied for more insurance, but the agent informed him that he represented no company that would carry additional insurance on his property, but directed him to another agent. He applied to this agent who procured two policies for him for $2,000 each—one in the North River Insurance Company of New York and one in the American Insurance Company of Newark, N. J.

It is conceded that he made no disclosure to the agents of the appellant companies of the facts within his knowledge relative to the conditions existing at Balkan or the threats that had been made against him. Mr. J.B.Coffee, a deputy state fire marshal, was introduced as a witness, and he testified that he went to Balkan a few days after the fire occurred to make an investigation, and that in the course of that investigation Dr. Clayton made the following statement under oath, which was taken down in shorthand by a stenographer and later transcribed:

"The reason I increased my insurance was because Dr. Wilson told me that Dr. Millard Hoskins had told him, Dr. Wilson, that he, Dr. Hoskins, had heard in the barber shop they were going to dynamite the house. I investigated and asked Dr. Hoskins. He admitted to me he had heard it; he told me later in front of the Bingham Drug Store the same thing. After I received this information I went to Dr. Wilson, he knew the stuff I had and knew its value, I went to him and talked this over and he advised me to protect myself by more insurance. I also talked this over with Dr. Evans of the Evans Hospital in Middlesboro, he knows the stuff I had too. After they advised me to do it I went to Middlesboro to Manring and they told me to come to Pineville, which I did, and increased my insurance."

Dr. Clayton did not deny making this statement.

The argument is made in behalf of the appellants that the evidence conclusively shows that facts material to the risk were concealed by the insured, and that consequently on authority of Federal Fire Insurance Company v. Harvey, 225 Ky. 838, 10 S. W. (2d) 311, and Commonwealth Life Insurance Company v. Goodknight's Administrator, 212 Ky. 763, 280 S. W. 123, there was nothing to submit to the jury and the motion of the defendant in each case for a directed verdict in its favor should have been sustained.

To avoid the policy the concealment must be of a matter material to the risk, and it must not only appear that the insured knew, or that the circumstances were such that an ordinarily prudent person would know, that the fact concealed was material to the risk, but

also that it was intentionally and fraudulently concealed. Continental Insurance Company v. Ford, 140 Ky. 406, 131 S. W. 189. Fraudulent concealment exists where the insured has knowledge of a fact material to the risk which honesty and fair dealing require that he should communicate to the insurer but which he intentionally withholds, and this, although no inquiries were made. Queen Insurance Company v. Cummins, 206 Ky. 300, 267 S. W. 144.

Here the insurance companies have defended on the ground that Dr. Clayton concealed material facts from them in obtaining the policies. He knew and recognized that the facts within his knowledge were material because he stated that it was on account of the threats and condiions existing at the mining camp where the property was located that he procured additional insurance. It is conceded that he did not disclose these facts to the insurance companies when he applied for the insurance. By his own admission his fear of danger to the property was the moving cause of procuring the insurance and the facts producing this fear should have been disclosed to the insurer. The facts were such as to cause a reasonable apprehension by him of the danger to his property, and the danger itself was of such a nature as would enhance the risk in the mind of an ordinarily prudent and intelligent man. Ordinarily the materiality of the facts concealed is a question for the jury, but here there is no dispute as to materiality. It was shown without contradiction that an insurer acting reasonably and naturally in accordance with the practice usual among fire insurance companies under similar circumstances, would not have insured the property if the facts had been disclosed.

The hypothetical question propounded to the expert witness who testified on this point is criticized because it did not state the facts as shown by the evidence. The hypothetical question contained this statement:

"Threats had been made to dynamite his house in which some property, which was insured by the policies here in controversy, was located."

It is claimed there is no evidence to warrant this statement. However, Dr. Clayton's statement to the deputy state fire marshal, put in evidence by the witness Coffee, contained substantially the assumed facts of which criti-

cism is made. It is also argued that Coffee's testimony as to Dr. Clayton's statement is incompetent because the witness used the stenographer's transcript of the evidence heard in the investigation held by Coffee shortly after the fire, and that the witness read the statement made by Dr. Clayton as shown by the transcript. The witness was using the transcript to refresh his recollection, and the appellee certainly cannot complain because the precise words used by him were introduced in evidence.

We conclude that the court erred in sustaining the plaintiff's motion for a peremptory instruction and in overruling similar motions made by the defendants.

There is an intimation in the record that the policy for $2,500 of the Great American Insurance Company of New York was issued and delivered to appellee about a month before the old policy expired and before the appellee had been informed of the threats being made against him and before he had any reason to believe that his property was in danger of destruction. If that is true, what has been said would have no application in the case involving the validity of that policy.

It is argued that the answer is insufficient because it contains no allegation that the alleged fraud was not discovered prior to the loss and that, therefore, the directed verdict in favor of the appellee was proper. The case of Central States Fire Insurance Company v. Holland, 219 Ky. 727, 294 S. W. 489, is cited in support of this contention. In the answer in the instant case it was alleged that certain facts material to the risk, known to the plaintiff but not within the knowledge of the defendant, were fraudulently concealed by the plaintiff from the defendant and that the defendant would not have entered into the contract sued upon if these facts, or any of them, had been known to it. It is appellee's contention that the answer should have gone further and alleged that defendant failed to discover the alleged fraud after the contract was made and before the loss occurred. This would require the defendant to plead and prove a negative. There is nothing in the pleadings to indicate that defendant, prior to the loss, learned of the conditions existing at Balkan or received any information concerning the alleged threats. With the pleadings in this state it was incumbent upon the plaintiff to plead affirmatively any facts constituting

an estoppel or waiver. Insurance Company of North America v. Gore, 215 Ky. 487, 284 S. W. 1107; Excelsior Coal Mining Company v. Virginia Iron, etc., Co. (Ky.) 66 S. W. 373, 23 Ky. Law Rep. 1834.

There are statements in the opinion in Central States Fire Insurance Company v. Holland, supra, which lend color to appellee's contention, but what was said in the opinion must be read in the light of the facts of that case. It was alleged in the answer in the Holland Case that the insured had practiced a fraud upon the insurance company by obtaining the issuance of the insurance contract without the consent of the agent, Cornett. It appeared that Cornett when first approached refused to issue the policy until he had made an investigation. The insured later went to his office and Cornett was out, but his partner, who was present, upon the representation of the insured that Cornett had agreed to insure the property, directed a clerk to issue the policy. The policy, which was filed with the petition, was signed by Cornett as agent. The answer was held demurrable on the ground that the pleadings disclosed facts from which the knowledge of Cornett that the policy had been issued might be inferred. With the pleadings in that state it was incumbent upon the insurance company to allege in its answer that it had not discovered the facts relied upon as constituting the alleged fraud, subsequent to the issuance of the policy and prior to the loss.

In the instant case the pleadings disclosed no facts from which the knowledge of the alleged threats may be inferred. If such facts existed they should have been pleaded by the plaintiff in avoidance of the plea of fraud.

The judgment in each case is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.