# Fidelity-Phenix Fire Insurance Co. v. Mears et al.

(Decided June 4, 1935.)

GORDON, LAURENT, OGDEN & GALPHIN and MILBY & HENDERSON for appellants.

VERNON SHUFFETT for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This is an appeal from the judgment of the Green circuit court in a suit by appellee Annie Mears on a policy of fire insurance covering certain real and personal property in Green county. The policy was issued on the 12th day of July, 1933. On January 20, 1934, a

fire occurred, destroying the barn insured, and about one week thereafter another fire occurred, destroying the dwelling house, smokehouse, corncrib, poultry house, and some other personal property insured under the policy.

The defense presented by appellant was that the assured, appellee, failed to disclose facts material to the risk, and further that she misrepresented material facts, viz.: On March 23, 1933, prior to the application for the insurance, Jeff Skaggs made threats to appellee that he was going to burn this property. Immediately thereafter appellee went before the county judge of Green county and procured a warrant for the arrest of Skaggs because of these threats. In the affidavit for the warrant she stated that Skaggs had threatened to burn her dwelling house and she believed he would execute his threat if not restrained by law. Skaggs was arrested on the warrant and held in jail until about May 1, 1933. On or about June 12, 1933, she went to see an insurance agency in Campbellsville and applied for insurance on her property. The application for the insurance was not taken at that time, but on July 12 representatives of the insurance agency went to the home of appellant, examined the premises and property sought to be insured, and took her application for the policy, which was signed both by herself and by her husband, Robert Mears, and upon this application the policy here in question was issued. In the application there appears this question and answer: "Do you have any fear of incendiarism? A. No."

For an accurate statement of the evidence we note the following questions and answers thereto taken from the testimony of appellee, the insured, on her cross-examination:

"Q. For several years prior to the time you took out your application for this insurance, Jeff Skaggs had been an enemy of Robert Mears. Is that right? A. Yes, sir.

"Q. Some time in the spring of 1933 and before this policy was taken out, Mr. Skaggs met you on the road one day and made a certain statement to you, did he not? A. Yes, sir.

"Q. Just where was that statement made, Mrs. Mears? A. Just below the house on the highway.

"Q. On the basis of what he stated to you at that time, you took out a warrant for him and had him arrested, did you not? A. Yes, sir. * * *

"Q. Mrs. Mears, on the basis of the statement which Mr. Skaggs made to you, you went and took out the warrant, did you? A. Yes, sir.

"Q. Skaggs was arrested on that warrant, was he? A. Yes, sir.

"Q. And he was put in jail here, wasn't he? A. Yes, sir.

"Q. Do you know when he got out of jail, after being put in on this warrant? A. No, sir.

"Q. Do you know about how long he stayed in jail? A. No, sir, I don't remember just how long he stayed in.

"Q. Well, he was in jail until about the first of May, wasn't he? A. I don't know.

"Q. Now, the statement you made in that affidavit before Judge Durham was true was it not? A. Yes, sir.

"Q. That was true at the time you made it? A. Yes, sir.

"Q. Mrs. Mears, at the time you knew, or did you know, whether or not Skaggs had been accused of burning Tinnie Farmers place? A. Well I—

"Q. You knew what his general reputation was at the time you took out the warrant, didn't you? A. Yes, sir.

"Q. How long before this policy was taken out had it been since you previously carried insurance on this place? A. I don't know how long.

"Q. Well, wasn't it about five years, Mrs. Mears? A. I just don't remember how long it was.

"Q. Now, after you took out this warrant and after Skaggs was released from jail, you decided to take out some insurance on your property, didn't you? A. Yes, sir.

"Q. You wanted to be protected in case this man carried out his threats of burning this property, did you? A. I wanted to be protected.

"Q. You stated in that affidavit that you were

afraid he would carry out those threats he made, unless he was restrained by law from doing so? A. Yes, sir, I was afraid.

"Q. And, you wanted insurance to protect you in case he did carry this out, didn't you? A. I did not think anything about the threats, when I had the insurance written up.

"Q. How far do you live from Campbellsville? A. I just don't know, about twenty-five miles I guess, twenty miles anyway.

"Q. Do you have to come through Greensburg to get to Campbellsville? A. Yes, sir.

"Q. You live about twelve miles from Greensburg, don't you? A. Yes, sir.

"Q. There is a local insurance agency in Greensburg, is there not? A. Yes, sir. * * *"
On redirect examination she testified as follows:

"Q. Now, Mrs. Mears, relative to the statement that Mr. Skaggs made to you. State to the jury, what he said to you on that occasion. A. He said he was going to get rid of Robert, if he had to burn him out. He said he did not have anything against me and the kids; but he was going to get rid of Robert, if he had to burn him out. * * *

"Q. Mrs. Mears, do you know whether or not after this Mr. Skaggs made that threat you testified about, and before you took this insurance or made this application for insurance. In the meantime do you know whether or not Mr. Skaggs and your husband had made friends before you took the insurance? A. Yes, sir.

"Q. How long had they been on good terms, if you know, at the time you took out this insurance? A. Well, I don't know just how long.

"Q. Had they or not been associating together? A. Yes, sir."

It is shown that some time previous to these threats that Skaggs and Robert Mears, husband of appellee, had had some trouble. Skaggs had procured an indictment against Robert Mears accusing him of burning a church house for which Mears was tried and in which trial Skaggs appeared in the Green circuit court at Greensburg as a prosecuting witness. This trouble ac-

counts for the threats that Skaggs made to Mrs. Mears that he would "get Robert out of there if he had to burn him out."

However, on recross-examination appellee stated that she did not know whether she had seen her husband and Skaggs associating together; and, in answer to a question as to how long they had been on good terms, she said she did not know just how long, and did not know whether or not they had "made up" except what they had told her.

Thus it will be seen that she had no personal knowledge that her husband and Skaggs had become friendly except what she had been told. Appellant, defendant below, introduced J. W. Bethel, an insurance agent who testified that he was state agent for the state of Kentucky for a number of fire insurance companies, and had been engaged in the fire insurance business since 1908, and since 1917 and 1918 he had been passing on the acceptability of applications for fire insurance. He testified, however, that he had no connection with the appellant company. We note the following hypothetical question and answer thereto:

"Q. In the affidavit for the warrant, she stated: 'The affiant, Annie Mears, states that Jeff Skaggs has threatened to commit a felony, the crime of arson, that he has threatened to burn her dwelling house and she believes he will execute his threat if not restrained by law.' Jeff Skaggs was arrested on that warrant, and confined in jail from March the 25th, 1933, to May 1st, 1933, and after this, about June 12, 1933, Mrs. Mears told the agents, Buckner and Turner at Campbellsville, Kentucky, that she wanted to take out some insurance and for them to come to her place and look the property over. Thereafter and on July 12, 1933, Buckner and Turner called to see Mrs. Mears at her place and on that day she signed an application for insurance in this Defendant Company, and in which she represented that she had no fear of incendiarism. At this time she and her husband, Robert Mears, were living together at this place. I will ask you to state, Mr. Bethel, whether or not, you are familiar with the Farm Policy, issued by the Fidelity Phenix Fire Insurance Company? A. I am.

"Q. I will get you to state, by your experience whether or not any fire insurance company doing business, in the usual and customary manner of fire insurance companies, doing business in this state, would have issued a policy of fire insurance on this property which is located in Green county, Kentucky, about twelve miles from Greensburg, on about a 110 acre farm, if the applicant had disclosed the fact that the threats above recited in this question had been made? A. They would not.

"Q. Mr. Bethel, state whether or not, any fire insurance company doing business in the State of Kentucky, or anywhere for that matter, in the United States, conducting its business in the usual and customary manner as fire insurance companies conduct their business, would issue a policy to an applicant if the applicant had disclosed to such insurance company, that a threat had been made to the Applicant by another, that such and such a person was going to burn his property. A. They would not.

"Q. Would they issue such a policy, if the applicant disclosed that the applicant was in fear of a person burning his property? A. They would not."

C. E. Graham, another insurance agent, testified that he had had a number of years' experience in the fire insurance business and in taking applications for insurance and farm property from time to time in various companies. He was asked:

"If an applicant for insurance disclosed to you as agent that threats had been made to burn his property state whether or not any insurance company you have represented during the last 20 years would issue a policy if such threats were disclosed to it. A. They would not."

It will be noticed that in the hypothetical questions asked the insurance agents there was not included the fact that appellee had been informed that Skaggs and her husband had made friends before she applied for the insurance. And it may be further noticed that on cross-examination counsel for appellee did not cross-examine the witnesses on the question as to whether or not her husband and Skaggs had become friendly would

have had any bearing on the risk. In view of the ill feeling that had existed over a long period of time between her husband and Skaggs and the further fact that she had procured a warrant for Skaggs and had him incarcerated in jail for more than a month because of his threats to burn the property, it is indeed doubtful that the apparent or pretended reconciliation between her husband and Skaggs would have had any bearing on the representatives of the insurance company in passing upon her application, had all these facts been made known to them.

The purpose of the question as to whether appellee had any fear of incendiarism was not only to elicit from her her attitude of mind but also any facts or circumstances which may tend to show that there was or might be danger of incendiarism. Conceding that appellee did not fear incendiarism at the time she applied for the insurance, yet it became her duty to disclose to the insurer all the information she had regarding the risk. In Queen Ins. Co. v. Cummins, 206 Ky. 300, 267 S. W. 144, 146, this court said:

"When a man takes insurance he is asking some one else to take a risk he is unwilling to carry himself, and common honesty requires that he give to the insurer all the information he has regarding the risk."

When appellee was asked the question whether she had any fear of incendiarism, there is no escape from the conclusion that she was then reminded of the trouble she had had with Skaggs, and it then became her duty to disclose these facts to the insurer. As will be seen from her testimony, she became so alarmed about the threats Skaggs had made to her that she had him arrested and confined in jail. She also admits that she was afraid and wanted to be protected with insurance in the event he carried out his threats. But she now says that, simply because she had been informed that Skaggs and her husband had made friends, she then forgot the entire incident so far as any danger was concerned, and did not think anything about the threats when she had the insurance written up.

Another fact which may be of some significance is that she passed through the town of Greensburg within 12 miles of her home, where she said she knew there

was an insurance agency, but did not there apply for the insurance, but went to Campbellsville, which was entirely out of the immediate community where she, her husband, and Skaggs had had all their trouble, and procured the insurance from an agency in Campbellsville. She offers no explanation as to why she did not apply for the insurance at Greensburg. These facts may warrant the inference that she doubted that she could procure insurance with the agency in Greensburg because of the trouble between her family and Skaggs.

In Great American Ins. Co. v. Clayton, 247 Ky. 612, 57 S. W. (2d) 467, Dr. Clayton received information that threats had been made to burn his office, he then applied for additional insurance on his office and its contents, which was issued, and soon thereafter his office and its contents were burned. The insurance company refused to pay the policy on the ground that Dr. Clayton concealed from it facts material to the risk. It is not shown in that case that, when Dr. Clayton made application for the insurance, he was asked whether or not he had any fear of incendiarism or any similar question. However, on appeal to this court, we held that he was not entitled to recover under his policy on the ground that he withheld from the insurance company facts material to the risk. The case at bar is stronger in this respect than the Clayton Case, in that Mrs. Mears was asked whether she had any fear of incendiarism. However, in the Clayton Case Dr. Clayton testified that, when he received information that threats had been made to burn his office, he then procured the insurance because of these threats. In the case at bar appellee says that she did not think anything about the threats when she had the insurance written up. It may be further noticed that her application for the insurance was made approximately one month before the policy was issued; but, to give her the benefit of the doubt, we assume that she meant that she did not think anything about the threats at the time she made application for the insurance. To conclude that she did not think about these threats when she was asked the question whether she had any fear of incendiarism would be contrary to all reason and known traits of the human mind.

In the light of the facts and circumstances revealed in this record, we are constrained to the conclusion that

appellee concealed from the appellant company facts material to the risk, and she is not entitled to recover under the policy sued on, and the court should have sustained appellant's motion for a directed verdict.

The judgment is reversed for proceedings consistent herewith.

The whole court sitting.