# Great American Ins. Co. of New York v. Clayton.
## North River Ins. Co. v. Same.
## American Ins. Co. of Newark, N. J., v. Same.

(Decided Dec. 4, 1936.)

FRANK M. DRAKE and N. R. PATTERSON for appellants.

LOW & BRYANT and GOLDEN, LAY & GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

This is the second appeal of these cases; our opinion disposing of the first one is reported in 247 Ky. 612, 57 S W. (2d) 467, 469. In it the salient and material facts forming the conditions at the time the policies sued on were obtained are set out and they will not be repeated in this opinion any more than is necessary for its comprehension. We reversed the judgments of the trial court against each of the appellants in that appeal, and in the opinion, after analyzing the facts and adopting the principles of law that we concluded were applicable thereto, said: "We conclude that the court erred in sustaining the plaintiff's motion for a peremptory instruction and in overruling similar motions made by the defendants." That opinion is the law of the case under the same, or substantially the same, facts, and the same conclusions would be compelled now, unless upon the last trial additional material and relevant testimony was introduced to alter the case and render it a submittable one to the jury.

Learned counsel for appellants strenuously insist and argue that no such testimony was heard at the last trial which was had after the filing of the mandate from this court, and at which the same verdicts returned on the former trial were rendered; whilst equally learned counsel for appellee contend to the contrary. Of course, as is usual, other questions are injected into the case and laboriously discussed by both sides, but, if the contention of appellants' counsel is correct and should be sustained, it becomes unnecessary to even refer to, much less discuss, any of the other questions. Since we have concluded that the argument of appellants' counsel should be sustained, except as to the Great American Insurance Company of New York, we will proceed at once to demonstrate why we have so concluded, and will then follow the disposition of that question to a determination of the case as to that excepted appellant.

The two policies, one with the North River Insurance Company and the other with the American Insurance Company (two of the appellants herein) were issued on March 28, 1929, by a local insurance agency located in Pineville, Ky., the partners in which were W. S. Mory, John Matt Pursifull, and C. T. Woolum, operating under the partnership name of "Kentucky In-

surance Agency''; whilst the policy in the appellant Great American Insurance Company was issued to take effect on March 31, 1929, and by an agency located in Middlesboro, Ky., near which latter city the insured property was located, but which was some twelve or fifteen miles from Pineville. The occurrences resulting in the situation described in our former opinion happened prior to the application for the two policies issued by the Pineville agency, but the renewal policy of the Great American Insurance Company of New York was actually written and delivered to plaintiff and appellee before then, but not to take effect until the following March 31, when the then existing policy of the same company for the same amount expired. So that the renewal policy was both issued to and received by the insured before the defensive matters herein relied on occurred.

A different situation exists as to the other two appellants, and the way and manner that they became involved is, in substance, this: The insured, because of the conditions described, became alarmed, and he called upon the agency which issued the only policy he was carrying (and which had been renewed to take effect in the future, as we have indicated), for additional insurance which he had been warned and advised to do by his physician associates and friends, as set out in his statement made to the deputy state fire marshal, J. B. Coffee, an exact copy of which appears in our first opinion. He was informed that the agency represented no company that would take the additional insurance that he desired; whereupon he journeyed to Pineville, where he met one Atterbury in the office of the Kentucky Insurance Agency and applied to him for additional insurance; but Atterbury informed him that he represented no company that would issue policies covering the character of risk involved, which were located outside of the city of Pineville, and directed him to a member of the Kentucky Insurance Agency, Dr. Mory, who occupied an adjoining office in the practice of his profession of chiropractor. The insured, with Atterbury's assistance, succeeded in having Mory to issue the two policies of North River Insurance Company and the American Insurance Company, both of which his agency represented, but neither of which was represented by Atterbury.

Appellee on the second trial admitted all the facts

stated in our first opinion and also testified that: "I took out insurance [meaning the two policies now under consideration] as a precaution," and that "He [Dr. Hoskins] told me I was liable to get killed or blown up." His testimony as a whole indisputably demonstrates that he was induced to procure the last two policies because of the created conditions in the mine where he resided and had his office, and the threats that had been made against his property and possibly against him, unless he evacuated the premises he was then occupying and relinquished his employment as physician for the miners at work in the mine. To avoid and circumvent the conclusions announced in our first opinion, plaintiff stated at the last trial that, when he approached Atterbury for the additional insurance, "he asked me how I was getting along and I said all right, that I had had a little trouble, and I told him that I wanted more insurance. I just left it up to Mr. Atterbury how much, and I had this insurance policy in my pocket." He also stated that he then said: "You don't know what is going to happen," and that, "When I asked for additional insurance I also told Mr. Atterbury when he asked me how I was when I came in. I said I had been having a little trouble and when I went in with Mr. Atterbury to where Dr. Mory was I said, 'You don't know what is going to happen,' and they wrote me up the $4,000.00 additional insurance." He never at any time denied the facts contained in the statement he made to the deputy fire marshal, but which he admitted in his testimony given on the last trial. It is therefore insisted that the testimony on the trial now being reviewed met the objection that was made and sustained to the judgment at the first trial, because the agent that issued the policy was informed of the conditions. But we cannot agree therewith, for the plain and manifest reason that the very essence of the danger to the risk was not told to the agent by the insured according to his inserted testimony above. There is a vast difference between a threat to dynamite and destroy property and a statement of "having a little trouble." It requires no argument to demonsrate that proposition.

Atterbury, Mory, and one Oldfield were introduced at the last trial, none of whom testified at the first one. Besides attempting to prove what occurred at the time of the procuring of the last two policies by Atterbury and Mory, those three witnesses testified as experts to

prove that insurance companies generally would issue policies under the established conditions without hesitation, and that therefore the concealments relied on as a defense were immaterial. But, conceding the competency of those witnesses (they being local agents with power to temporarily issue policies subject to approval or rejection by their companies to which they were required to submit them), which is exceedingly doubtful, their testimony was based, not upon the actual facts, but upon entirely different ones of far less hazardous nature submitted to them in the hypothetical questions propounded by counsel. Atterbury was asked: "If Dr. Clayton there on that occasion, at the time he made the application for that insurance had stated to you that Dr. Hoskins had heard someone in the barbershop at Balkan (where the mine was located) remark that Dr. Clayton would wake up some night with a box of dynamite exploding on his front porch, would insurance companies that you represent, and insurance companies generally have issued a policy anyway?" Defendants objected to the question, but it was overruled, and this answer was made: "I think they would for this reason. From the threat that dynamite might be exploded on his front porch I would take it that they didn't mean they were going to burn him out or anything like that. And that that was just started more as an idle threat than anything else." It will be perceived that the answer is in the first place guarded and very muddily and unsatisfactorily explained, nor did the question itself embody the information possessed by the insured which was—as is disclosed by our former opinion—that the miners (the enemies of the insured) "were going to dynamite the house" and that the same information was later repeated to him by the same person.

The witness Mory stated that he did not hear all of the conversation between Atterbury and the insured, except that the latter stated that "there was some confusion up there" and that "You can't tell what may happen"; and that plaintiff then said "he had to be a little better covered, or something to that effect." As an expert he was asked this hypothetical question: "Doctor, I will ask you if in a controversy between a doctor and the miners in these camps like Balkan up here, in which they were trying to adjust the question of fees which the doctor charged the miners, and the question of the termination of a contract was involved,

**414**

and the fact that the miners were holding meetings in their effort to determine the question, and if it should finally develop to the state where the doctor's services should be discontinued, and that the doctor should be asked to surrender his quarters, living quarters and office building—if that state of affairs would be such that insurance companies generally and those that you represented would not have accepted that risk of Dr. Clayton, the risk that he offered there, and have put that insurance in force?'' To which witness answered: ''I think they would have, knowing everything about the risk.'' He was then asked substantially the same question as propounded to Atterbury and made a similar evasive answer.

The witness, Oldfield, was asked a similar question to obtain his opinion as an expert, to which he answered: ''I believe he would be worthy of some fire coverage. * * * I believe the risk would have been written and an immediate inspection made of it.'' Atterbury, it will be remembered, did not represent either of the companies whose policies are in contest, though he testified that there was some sort of working arrangement between him and the agents who issued the last two policies; but it is nowhere attempted to be shown that either of the companies involved knew anything about any such working arrangement. For reasons stated, and which could be rendered much more potent. if we had space or time, the actually proven conditions were not attempted to be met by the recited new evidence relied on, since the statements made by the insured at the time he procured the two policies in contest did not embody the crucial and most material facts creating the concealed hazard, and which we held in our former opinion was material to the risk. It is true that we also referred to the fact that there was no dispute as to the materiality of the concealed facts, but that statement was made only as an additional fact supporting the conclusions reached at that hearing, since the opinion had already stated that ''the facts were such as to cause a reasonable apprehension by him [insured] of the danger to his property, and the danger itself was of such nature as would enhance the risk in the mind of an ordinarily prudent and intelligent man.'' Emphasis was given also therein to the knowledge that the insured possessed at the time with reference to the hazard and his concealing it, and which is thus expressed: ''He

knew and recognized that the facts within his knowledge were material because he stated that it was on account of the threats and conditions existing at the mining camp where the property was located that he procured additional insurance.'' Such conclusions became the law of the case, even if they had been incorrect, and, for that reason alone they should now be followed by us; but we entertain no doubt concerning their soundness nor do they conflict with the law as approved by us in the case of Federal Fire Insurance Company v. Harvey & Co., 225 Ky. 838, 10 S. W. (2d) 311, which is the strongest one supporting plaintiff's theory cited by his counsel.

In the first place, the facts creating the alleged increase of hazard in that case happened and occurred after the policies therein involved were issued—and in the next place there was no proven threat nor any conditions creating enmity toward the insured, as is admitted to be true in this one. No one can read this record impartially without coming to the conclusion that the insured became alarmed over the conditions and sought to increase his insurance to nearly treble the amount he theretofore carried for a period of seven or eight years without it ever occurring to him to increase it. Our former opinion in this case, together with the generally declared law upon the subject, announces the rule to be that material facts affecting the risk should be disclosed by the insured if known to him. They were so known in this case, and the circumstances surrounding the procurement of the two policies clearly indicate the intention and purpose of plaintiff in procuring those policies to be such as to render his concealment fraudulent and the concealment furnished grounds for defendants denying liability under the policies issued in such circumstances, which was also our holding in the former opinion. We therefore conclude that the requested peremptory instruction in favor of appellants North River Insurance Company and American Insurance Company of Newark, N. J., should have been sustained, and the court erred in overruling that motion.

Taking up now the case of the Great American Insurance Company of New York, we find that a different state of facts exist. We have already seen that it had theretofore been carrying the risk and the policy had been renewed and delivered to the insured before the concealed facts happened. In our former opinion we

said, with reference to the judgment against that appellant (247 Ky. 612, 57 S. W. [2d] 467, 469): "There is an intimation in the record that the policy for $2,500 of the Great American Insurance Company of New York was issued and delivered to appellee about a month before the old policy expired and before the appellee had been informed of the threats being made against him and before he had any reason to believe that his property was in danger of destruction. If that is true, what has been said would have no application in the case involving the validity of that policy." The evidence at the last trial established the fact upon which that statement was hypothecated. It is our opinion that that statement also became the law of the case with reference to liability under that policy, after the facts became established, as was done upon the last trial. However, counsel in behalf of that appellant earnestly argue that the same principle should apply to that client, since the previously delivered renewal policy did not take effect until after the concealed hazard occurred. But he cites no case directly in point, and at most the contention so urged is, to say the least of it, doubtful; and it should not be upheld in this case because to do so would conflict with what we held in our former opinion touching the same liability. It is therefore concluded that the court properly overruled the motion for a directed verdict made on behalf of that appellant, and that the issues with reference to its liability were properly submitted.

Wherefore, for the reasons stated, the judgment as to the Great American Insurance Company of New York is affirmed; but the ones against the other two appellants (North River Insurance Company and American Insurance Company of Newark, N. J.) are reversed, with directions to set aside the judgments against them and to sustain their motions for a new trial, and for further proceedings consistent with this opinion; the whole court sitting.